T.C. Summary Opinion 2002-110


UNITED STATES TAX COURT


JARED R. NIELD AND NAYLENE M. NIELD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11828-01S.                     Filed August 27, 2002.


Leasa M. Tripp, for petitioners.

S. Mark Barnes, for respondent.


CHIECHI, Judge:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

--------

[1]Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year at issue.

Respondent determined a deficiency in petitioners' Federal income tax (tax) for 1998 in the amount of $4,763.

The issue for decision is whether the $29,000 settlement amount (settlement amount at issue) that petitioner Naylene M. Nield (Ms. Nield) received in 1998 in settlement of a claim against her employer is excludable from petitioners' gross income under section 104(a)(2). We hold that it is not.

## Background

Most of the facts have been stipulated and are so found.

Petitioners resided in Cedar City, Utah, at the time they filed the petition in this case.

On September 5, 1989, Ms. Nield began working for Goer Manufacturing, Inc. (Goer). On or about July 9, 1992, Goer terminated her employment.

On December 31, 1992, Ms. Nield filed a claim (State claim) against Goer with the State of Utah Industrial Commission, Anti-Discrimination Division (Utah Industrial Commission) consisting of two affidavits by Ms. Nield (Ms. Nield's affidavits) in which she alleged employment discrimination, sexual harassment, and retaliation.[2] One of Ms. Nield's affidavits alleged that "when * * * [Ms. Nield's supervisor] would walk past me he would lift up his elbow and bump into my breast."

---

[2]Although the record is unclear, it appears that at some time after Ms. Nield filed the State claim, that claim was referred to the Equal Employment Opportunity Commission (EEOC).

On or about October 4, 1996, Ms. Nield received a "Notice of Right to Sue" from the Phoenix District Office of the EEOC.

In December 1996, Ms. Nield filed a complaint (complaint) against Goer in the United States District Court for the Southern District of Utah (United States District Court). In that complaint, Ms. Nield alleged both a claim for sexual harassment under "Title VII of the Act of Congress known as 'The Civil Rights Act of 1964' (42 U.S.C. §2000e) et seq.)", and a State law claim for wrongful termination "in violation of Title [sic] 35-9-11, Utah Code Annotated."

Ms. Nield's complaint alleged in pertinent part:

11. During and throughout the period of Plaintiff's employment with Defendant [Goer], and culminating with the Defendants [sic] termination of the Plaintiff, the Plaintiff was subject to sexual harassment in violation of Section 704, Title VII (42 U.S.C. §2000e-3), to wit:

a. The Defendant, Goer Manufacturing Company subjected her to a hostile and sexually demeaning work environment due to repeated acts of sexual harassment by her supervisor * * * by subjecting the Plaintiff to such things as:

i. comments about her anatomy;

ii. degrading sexual remarks;

iii. pressure to date and give sexual favors to a co-worker in return for money;

iv. having sexually explicit calendars and cartoons in the workplace; and

v. other acts and omissions of and causing sexual harassment.

b.   Defendant, acted in a discriminatory manner towards her because Defendant retaliated against her by terminating her employment because she complained to management about the alleged sexual harassment, to wit:

i.   the supervisor about whom she complained had threatened to "get even" with her if she ever reported him to management again

ii.   Plaintiff s [sic] supervisor was instrumental in the decision to terminate her

iii.   and was retaliating against her because she had reported his acts of sexual harassment to management.

12.   As a further result of the Defendant's above-stated actions, the Plaintiff has been and is being deprived of income in the form of wages and of prospective retirement benefits, social security and other benefits due to her as a worker solely because of her sex in the sum to be proven at the trial.

*        *        *        *        *        *        *

14.   Plaintiff invokes this court's jurisdiction * * * [to] adjudicate claims arising out of the transactions set forth above that violate rights and duties established by the law of Utah, to wit:

a.   That the Plaintiff s [sic] termination was wrongful in that it violates of [sic] the public policy set forth in 42 U.S.C. § 2000e.

b.   That the Plaintiff s [sic] termination was in violation of Title 35-9-11, Utah Code Annotated.

15.   The treatment of Plaintiff by Defendant and by Supervisor were [sic] intentional and with the purpose and intent of causing Plaintiff severe and grievous mental and emotional harm which in turn resulted in severe physical consequences in violation of the common law of Utah.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court

to:

1.  Grant Plaintiff a preliminary injunction requiring the Defendant to reinstate plaintiff as an employee * * * and enjoining defendant * * * from terminating Plaintiff and from harassing her or from retaliating against her and the class she represents for asserting their rights under Title VII;

2.  Grant Plaintiff a permanent injunction enjoining the Defendant Company * * * from engaging in any employment policy or practice which discriminates against any employee or member or applicant for employment on the basis of sex;

3.  Order defendant to make whole the Plaintiff herein by providing appropriate back pay and reimbursement for lost sick leave pay, health and disability insurance benefits, pension, social security and other benefits in an amount to be shown at trial, and other affirmative relief including, but not limited to, an affirmative action program designed to eliminate the effects of the discriminatory practices complained of herein;

    *        *        *        *        *        *        *

6.  Plaintiff prays for an award of actual damages to compensate plaintiff for the humiliation and associated personal suffering caused by Defendant's unlawful treatment in the amount to be proven at the time of trial of this matter but in an amount not less than $100,000.00.

7.  Plaintiff prays for an award of punitive damages in an amount believed by the court to be appropriate to punish Defendant for the willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future;

On January 19, 1998, Goer's attorney conducted a deposition

(deposition) of Ms. Nield with respect to her complaint.  Ms.

Nield testified during her deposition that

        There was another occasion where there was a
bunch of -- in my area it was -- I was in the light

department of Spartan Showcase, and in my area we had our work tables, and then right behind us we had bins -- well, they weren't really bins but they were wood things that had the sheets for the lights in it.  And there was not very much room between there because we had a bunch of stuff stacked in there, and he had brushed by me and did this type of thing into my breast (indicating).

In connection with Ms. Nield's foregoing testimony during her deposition, Goer's attorney asked her the following questions, to which she gave the following answers:

Q  Talking about elbowing?

A  Bumped his elbow right into my breast.  And I told her about that.

Q  What else did you tell her?

A  The way he talked, the way he swore.  I told her everything that I have told you.

Q  So you told her about how he broke things?

A  Yes.

Q  Told her about how he would scream and abuse everybody?

A  Yes, and the derogatory statements, harassing women.  I told her everything.

Q  What did she say after you told her all that?

A  She said, okay, thank you, and continued her --

Q  You mentioned something about the elbow in the breast.  When did that happen and what happened?

A  He just had -- he was joking with somebody over down farther from me, and I don't know what was going on.  I could just hear everybody laughing. * * * [the supervisor] was there, * * * [coworker 1] was there, and I don't know who else was there.  But I could hear * * * [the supervisor] and * * * [coworker 1] laughing,

because they did it all the time.

And then he came through, there wasn't room to get through so he was pushing his way through and then started laughing and just kept going.

Q  So you were standing --

A  I was standing there working at my table.

Q  At your table.  And he was walking behind you?

A  Well, he -- he kind of had to zigzag through all the stuff that was stacked right there, and * * * [coworker 2] was there too because she worked and helped me there.  And he had -- there was more room in between her and him or her and the stuff, and so he just walked normal past her.  But to get around me I had to turn sideways and kind of move out of the way, and when he did -- or when I turned he did that.

Q  Do you believe he did that on purpose?

A  Well, he was laughing about it.  So yes, I did.

Q  And because he was laughing you felt he did that on purpose?

A  Yes.

Q  In your mind is it just as possible that he did it by accident and then at that point thought it was amusing?

A  No, because if he had done it on accident he wouldn't have even realized he did it.  He would have just kept going and doing his --

Q  So what did you say to him?

A  I just said -- I just made a -- I didn't really say anything.  I just was disgusted.

Q  When did that happen?

A  That was probably somewhere in between '90 and '91.  That never happened again after that.

Q  Anything else that he said or did, that * * * [the supervisor] said or did that you thought was sexually harassing other than everything we've talked about so far?

A  Well, there's nothing that stands out in my mind.

On March 20, 1998, Ms. Nield and Goer executed a document entitled "SETTLEMENT AGREEMENT AND GENERAL RELEASE" (settlement agreement).  The settlement agreement provided in pertinent part:

1.  Payment Terms.  The Company [Goer] shall pay Nield and her attorneys the amounts set forth below within fourteen (14) days after receipt by the Company's counsel of an original of this Settlement Agreement and General Release executed and dated by Nield.

The payment shall be made in the following manner:

a.  The Company will pay and cause to be delivered to Nield's attorney, David T. Berry a check made payable to Naylene Nield in the gross amount of Three Thousand Dollars and No/100 ($3,000.00), less required payroll deductions.  An IRS Form W-2 will be issued to Nield by the Company.

b.  In addition to the foregoing payment, the Company will pay Nield the sum of Twenty-nine Thousand Dollars and No/100 ($29,000.00) as non-wage consideration for general compensatory damages for pain and suffering incurred by Nield relating to her claims of intentional discrimination and alleged sexually hostile working environment experienced by Nield while working at Goer.  This amount will be paid by separate check made payable to Nield, and the Company will issue an IRS Form 1099 reflecting this amount.

*        *        *        *        *        *        *

2.  Mutual Release and Covenant Not To Sue.

a.  * * * Nield, hereby fully, finally and unconditionally releases and forever discharges Goer from and for any and all claims, liabilities, suits, dis-

crimination or other charges, personal injuries, de-
mands, debts, liens, damages, costs, grievances, inju-
ries, actions or rights of action of any nature whatso-
ever, known or unknown, liquidated or unliquidated,
absolute or contingent, in law or in equity, which
could have been filed with any federal, state, local or
private court, agency, arbitrator or any other entity,
based directly or indirectly upon Nield's employment
with Goer * * *.

On March 26, 1998, Goer issued to Ms. Nield a check in the amount of $2,644.50, which represented the $3,000 in wages, less required payroll deductions, to which Ms. Nield was entitled under paragraph 1.a. of the settlement agreement. Pursuant to the settlement agreement, Goer issued to Ms. Nield Form W-2, Wage and Tax Statement, for 1998 showing the $3,000 in wages and the payroll deductions.

On March 27, 1998, Goer issued to Ms. Nield a check in the amount of $29,000, which represented the $29,000 in "non-wage consideration for general compensatory damages for pain and suffering" to which Ms. Nield was entitled under paragraph 1.b. of the settlement agreement. Pursuant to the settlement agree- ment, Goer issued to Ms. Nield Form 1099-MISC, Miscellaneous Income (Form 1099), for 1998 showing "Other income" of $29,000.

Petitioners filed a tax return (return) for their taxable year 1998. In that return, petitioners included in gross income the $3,000 in wages, and excluded from gross income the $29,000 settlement amount at issue, that Ms. Nield received from Goer.

On June 26, 2001, respondent issued to petitioners a notice

of deficiency (notice) for 1998.  In that notice, respondent determined that petitioners are not allowed to exclude from gross income the settlement amount at issue that Ms. Nield received from Goer.

## Discussion

We must determine whether the settlement amount at issue is excludable from petitioners' gross income for 1998.[3]

Section 61(a) provides the following sweeping definition of the term "gross income":  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  Not only is section 61(a) broad in its scope, Commissioner v. Schleier, 515 U.S. 323, 328 (1995), exclusions from gross income must be narrowly construed, id.; United States v. Burke, 504 U.S. 229, 248 (1992).

Section 104(a)(2) on which petitioners rely provides that gross income does not include

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

> *        *        *        *        *        *        *

> For purposes of paragraph (2) [of section 104(a)], emotional distress shall not be treated as a physical

---

[3]The resolution of the issue presented does not depend on who bears the burden of proof in this case.

injury or physical sickness. * * *

The regulations under section 104(a)(2) restate the statutory language of that section and further provide:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.  [Sec. 1.104-1(c), Income Tax Regs.]

The Supreme Court summarized the requirements of section 104(a)(2) as follows:

> In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2).  First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * *  [Commissioner v. Schleier, supra at 336-337.]

When the Supreme Court issued its opinion in Commissioner v. Schleier, supra, section 104(a)(2), as in effect for the year at issue in Schleier, required, inter alia, that, in order to be excluded from gross income, an amount of damages had to be received "on account of personal injuries or sickness."  After the Supreme Court issued its opinion in Schleier, Congress amended (1996 amendment) section 104(a)(2), effective for amounts received after August 20, 1996, by adding the requirement that,

in order to be excluded from gross income, any amounts received must be on account of personal injuries that are physical or sickness that is physical.  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1755, 1838-1839.  The 1996 amendment does not otherwise change the requirements of section 104(a)(2) or the analysis set forth in Commissioner v. Schleier, supra; it merely imposes an additional requirement for an amount to qualify for exclusion from gross income under that section.

Each of the two independent requirements described in Commissioner v. Schleier, supra, that a taxpayer must satisfy in order to qualify an amount for exclusion from gross income under section 104(a)(2) involves two inquiries that are similar.  In the instant case, the dual inquiries under the first requirement are whether Ms. Nield's underlying claims were based on tort or tort type rights and, if they were, whether such claims gave rise to the payment by Goer of the settlement amount at issue.  The dual inquiries under the second requirement are whether Ms. Nield's alleged injuries were personal and physical in nature and, if so, whether the settlement amount at issue was received on account of such personal physical injuries.

Respondent contends that the claims set forth in the complaint that Ms. Nield filed in the United States District Court were not based on tort or tort type rights and that Ms. Nield did

not receive the settlement amount at issue on account of personal physical injuries or physical sickness. Petitioners disagree.

We turn to the parties' dispute regarding whether the settlement amount at issue was received on account of personal physical injuries or physical sickness. That is because our findings and conclusions with respect to that dispute resolve the issue presented to us under section 104(a)(2).

Where damages are received pursuant to a settlement agreement, such as is the case here, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, supra at 237. The determination of the nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972). Where there is a settlement agreement, that determination is usually made by reference to it. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra. If the settlement agreement lacks express language stating what the settlement amount was paid to settle, the intent of the payor is critical to that determination. Knuckles v. Commissioner, supra; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is

relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. Agar v. Commissioner, supra; Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).

In support of her position that she received the settlement amount at issue on account of personal physical injuries, Ms. Nield relies on: (1) Her testimony, (2) the settlement agreement, (3) her deposition taken in connection with the complaint filed in the United States District Court, and (4) Ms. Nield's affidavits that comprised her State claim with the Utah Industrial Commission.

With respect to Ms. Nield's self-serving testimony regarding her contention that she received the settlement amount at issue on account of personal physical injuries, we find that testimony to be questionable in certain material respects. Moreover, Ms. Nield called no witnesses, such as the attorney who represented her with respect to her claims against Goer, in order to corroborate her testimony. Under the circumstances, we are not required to, and we shall not, rely on Ms. Nield's testimony regarding her position that Goer paid her the $29,000 at issue on account of her personal physical injuries. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per

curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

An example of Ms. Nield's testimony that we find to be questionable is her testimony that her supervisor at Goer (supervisor) bumped "into * * * [her] breast with his elbow" (alleged elbowing incident) and that that alleged elbowing incident caused her bruising.[4] Except for Ms. Nield's testimony at the trial in the instant case, the record before us, including her State claim, her complaint, and her deposition, shows that Ms. Nield did not make any claims that she suffered bruising or other physical injury as a result of her supervisor's having bumped into her breast with his elbow. Moreover, Ms. Nield admitted at trial, and the instant record establishes, that she did not seek medical treatment for the alleged bruising from the alleged elbowing incident, which she claimed for the first time during her testimony in this case.[5]

Another example of Ms. Nield's testimony that we find to be questionable is her testimony that her supervisor once tackled

---

[4]Ms. Nield did not testify at the trial in this case how many times her supervisor allegedly brushed his elbow against her breast. However, as discussed below, Ms. Nield testified during her deposition that the alleged elbowing incident occurred only once.

[5]According to Ms. Nield's testimony at the trial in the instant case, she did not seek medical treatment as a result of the elbowing incident "because it was just bruising that healed. It was very sore."

her in the parking lot at work (alleged tackling incident).[6]
Ms. Nield did not mention any such alleged incident in her State claim, her complaint, or her deposition. That was because, according to Ms. Nield, she was afraid of her supervisor, and she did not mention the alleged tackling incident until an alleged arbitration of her claims against Goer, which she contends took place after her deposition, when Ms. Nield asserts her supervisor was in jail, and which she contends led to the settlement agreement. Ms. Nield's explanation about why she did not mention the alleged tackling incident in her State claim, her complaint, or her deposition is belied by the fact that Ms. Nield showed no fear of her supervisor in advancing her various claims against him and Goer in her State claim, her complaint, and her deposition.

A further illustration of Ms. Nield's testimony that we find to be questionable is her testimony that her complaint, which she testified her attorney drafted on the basis of written information that she provided to him, did not allege any personal physical injuries because she did not have the opportunity to review the complaint before it was filed. We find Ms. Nield's

---

[6]Unlike her claim that she suffered bruising as a result of the alleged elbowing incident, Ms. Nield did not claim at the trial in this case, and the instant record does not establish, that the alleged tackling incident caused her any personal physical injuries. Moreover, the record establishes that Ms. Nield did not seek medical treatment for any alleged bruising from the alleged tackling incident.

explanation to be incredible.  We do not believe that if Ms.

Nield had communicated to her attorney that she suffered personal

physical injuries related to her employment, her attorney would

have failed to allege any such injuries in the complaint, espe-

cially since Ms. Nield's attorney filed the complaint on her

behalf in December 1996 after Congress amended section 104(a)(2)

to require that any amounts received after August 20, 1996, be

received on account of personal <u>physical</u> injuries or <u>physical</u>

sickness in order to be excludable from gross income.  See Small

Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605,

110 Stat. 1755, 1838-1839.[7]

Another example of Ms. Nield's testimony that we find to be

questionable is her testimony that her attorney advised her that

the tax law did not require her to include the settlement amount

at issue in gross income.  That testimony is belied by the

settlement agreement which required Goer to issue Form 1099 to

---

[7]Nowhere in the complaint is there an allegation that Ms.
Nield suffered any personal physical injuries.  In fact, the only
use of the word "physical" in the complaint is an allegation that
Goer caused Ms. Nield "severe and grievous mental and emotional
harm which in turn resulted in severe physical consequences".
That claim in Ms. Nield's complaint was a claim for damages on
account of "severe and grievous mental and emotional harm".  Sec.
104(a) provides that emotional distress is not to be treated as a
physical injury or physical sickness for purposes of sec.
104(a)(2).  In this connection, the legislative history of the
1996 amendment states:  "It is intended that the term emotional
distress includes symptoms (e.g., insomnia, headaches, stomach
disorders) which may result from such emotional distress."  H.
Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041
n.56.

Ms. Nield reflecting the $29,000 settlement amount at issue.

With respect to the settlement agreement on which Ms. Nield relies to support her position in this case, we have reviewed that agreement and find that it does not support Ms. Nield's contention that she received the settlement amount at issue on account of personal physical injuries. The settlement agreement supports a contrary finding. Nowhere in the settlement agreement were there any references to the alleged elbowing incident and the alleged tackling incident that Ms. Nield contends caused her physical injuries for which Goer compensated her by paying her the settlement amount at issue.[8] Moreover, as discussed above, the settlement agreement required Goer to issue Form 1099 to Ms. Nield showing the settlement amount at issue as "Other income" for 1998, thereby reflecting the intention of Goer as well as Ms. Nield, the parties to the settlement agreement, that Ms. Nield was to report the settlement amount at issue as income for that year.

With respect to Ms. Nield's deposition on which she relies, we have reviewed that deposition and find that it does not support Ms. Nield's position that she received the settlement amount at issue on account of personal physical injuries. The

---

[8]There is not even any reference to "physical injuries", and only one reference to "personal injuries", in the settlement agreement. The reference to "personal injuries" is in a paragraph in the settlement agreement that appears to be boilerplate, and we do not attribute any particular weight to it.

deposition supports a contrary finding. Although Ms. Nield raised the alleged elbowing incident in her deposition, nowhere in the deposition did she allege that she suffered any physical injuries as a result of that incident.[9]

With respect to Ms. Nield's affidavits that comprise her State claim with the Utah Industrial Commission on which she relies, we have reviewed those affidavits and find that they do not support her position that she received the settlement amount at issue on account of personal physical injuries. Ms. Nield's affidavits support a contrary finding. Although Ms. Nield raised the alleged elbowing incident in her State claim, nowhere in the affidavits did she allege that she suffered any physical injuries as a result of that incident.[10]

---

[9]Ms. Nield claimed in her deposition that her supervisor once brushed his elbow against her breast while he was walking past her in an area where there was a limited amount of space for two people. Based upon Ms. Nield's recitation in the deposition of how the alleged elbowing incident occurred, we believe that it was highly unlikely that she suffered any physical injury from that incident.

Nowhere in the deposition did Ms. Nield make any reference to the alleged tackling incident or any physical injuries as a result of that incident. However, we note that Ms. Nield testified at the trial in the instant case that she first mentioned the alleged tackling incident and alleged physical injuries resulting therefrom after her deposition took place.

[10]Although her State claim could be read to assert that the alleged elbowing incident happened at various times, she later clarified in her deposition that only one alleged elbowing incident took place.

(continued...)

Based upon our examination of the entire record before us, we find that Ms. Nield's claims against Goer did not include any claims for personal physical injuries. On that record, we further find that Ms. Nield did not receive the settlement amount at issue on account of personal physical injuries. On the instant record, we find that petitioners are not entitled to exclude from gross income under section 104(a)(2) the settlement amount at issue that Ms. Nield received from Goer.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[10](...continued)
Nowhere in the State claim did Ms. Nield make any reference to the alleged tackling incident or any physical injuries as a result of that incident. However, we note that Ms. Nield testified at the trial in the instant case that she first mentioned the alleged tackling incident and alleged physical injuries resulting therefrom after her deposition took place. See <u>supra</u> note 9.